UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>SHAMROCK MATERIALS, INC., et al.,<br><br>　　　　　　　Defendants.<br>_____/ | No.  C11-2565 MEJ<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>(Docket No. 18) |

## I. INTRODUCTION

Plaintiffs California Sportfishing Protection Alliance and Petaluma River Council (collectively, "Plaintiffs") bring this action under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251-1376 ("the Clean Water Act" or "the Act"). Defendants Shamrock Materials, Inc., Corto Meno Sand and Gravel, LLC, and Corto Meno Sand and Gravel II, LLC (collectively, "Defendants") have now moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Dkt. No. 18. Because the Court finds this matter suitable for resolution based on the parties' written submissions, the Court **VACATES** the hearing set for November 3, 2011. *See* Civil L.R. 7-1(b). After careful consideration of the parties' arguments, the Court **DENIES** Defendants' motion for the reasons set forth below.

## II. BACKGROUND

Plaintiff California Sportfishing Protection Alliance is a 501(c)(3) non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other California waters, including the Petaluma

River. Compl. at 3, Dkt. No. 1. Plaintiff Petaluma River Council is an unincorporated organization of citizens who reside in and around Petaluma and are committed to protecting and improving the health and character of the Petaluma River and the San Francisco Bay. *Id*.

Defendants operate a facility located at 210-222 Landing Way, Petaluma, California ("the Facility"), and are engaged in off-loading, storage, distribution, and transportation of gravel and sand at the Facility. *Id*. at 4. Sand, gravel, and aggregate materials at the Facility are unloaded from barges along the Petaluma River and subsequently stored in large, uncovered piles in two areas, and then loaded and distributed via diesel-fueled trucks. *Id*. The sand, gravel, and aggregate materials are transported from the Facility and delivered off-site to several ready mix concrete plants operated by Defendants throughout the areas of Petaluma, Novato, Napa, and San Rafael, California. *Id*. at 6. The Facility primarily provides support services to these ready-mix concrete plants. *Id*. at 6-7.

**A.    Statutory Background**

The Clean Water Act is intended to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In pursuit of this goal, section 301(a) of the Act prohibits the "discharge of any pollutant" into navigable waters from any "point source" without a permit. 33 U.S.C. § 1311(a) (except as otherwise provided in the Act, the discharge of any pollutant by any person shall by unlawful). "Discharge of a pollutant" is defined broadly to include "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12)(A); *Rapanos v. United States*, 547 U.S. 715, 723 (2006). And "navigable waters" means "Waters of the United States." 33 U.S.C. § 1362(7). "The phrase 'the waters of the United States' includes only those relatively permanent, standing or continuously flowing bodies of water 'forming geographic features' that are described in ordinary parlance as 'streams[,] . . . oceans, rivers, [and] lakes.'" *Rapanos*, 547 U.S. at 739.

Under the Act, the United States Environmental Protection Agency ("EPA") is required to regulate storm water discharges "to protect water quality." 33 U.S.C. § 1342(p)(6). The Administrator of the EPA has promulgated regulations defining the term "storm water discharge associated with industrial activity," which includes "the discharge from any conveyance which is

2

1  used for collecting and conveying storm water and which is directly related to manufacturing,
2  processing or raw materials storage areas at an industrial plant." 40 C.F.R. § 122.26(b)(14).

3  Section 402 of the Act provides for the issuance of a permit under the National Pollutant
4  Discharge Elimination System ("NPDES"). 33 U.S.C § 1342(a). A NPDES permit allows the
5  holder to discharge pollutants notwithstanding the general prohibition imposed by § 301(a). *Id*. The
6  NPDES permitting program is the "centerpiece" of the CWA and the primary method for enforcing
7  the effluent and water-quality standards established by the EPA and state governments. *Natural*
8  *Res. Def. Council, Inc. v. Cnty. of Los Angeles*, 636 F.3d 1235, 1245 (9th Cir. 2011) (citations
9  omitted). NPDES permits may be issued by the EPA or by state agencies that have been duly
10 authorized by the EPA. 33 U.S.C. § 1342(a)-(b). In California, the NPDES program is administered
11 by the State Water Resources Control Board ("the State Board"). Cal. Water Code § 13267(b)(1);
12 Pl.'s Req. for Judicial Notice ("Pl.'s RJN") Ex. B, Dkt. No. 20.

13 In 1991, the State Board elected to issue a statewide General Permit for industrial discharges,
14 which was subsequently modified in 1992 and reissued in 1997. Compl. at 5; Pl.'s RJN, Ex. C. In
15 order to discharge storm water lawfully in California, industrial discharges must comply with the
16 terms of the General Permit or have obtained and complied with an individual NPDES permit. 33
17 U.S.C. § 1311(a).

18 Sections 505(a)(1) and 505(f) of the Act provide for citizen enforcement actions against any
19 "person," including individuals, corporations, or partnerships, for violations of the NPDES permit
20 requirements and for un-permitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) & (f), §
21 1362(5). As membership organizations, Plaintiffs have standing to bring suit on behalf of their
22 members when they "would otherwise have standing to sue in their own right, the interests at stake
23 are germane to the organization's purpose, and neither the claim asserted nor the relief requested
24 requires the participation of individual members in the lawsuit." *Friends of the Earth v. Laidlaw*
25 *Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Adver.*
26 *Comm'n*, 432 U.S. 333, 343 (1977)). Defendants have not contested Plaintiffs' general standing to
27 bring suit on behalf of their members.
28

3

**B.     Plaintiffs' Allegations**

In their Complaint, Plaintiffs allege that storm water falling on the Facility percolates through and flows over the sand, gravel, and aggregate materials and runs freely over the surfaces of the sand and gravel storage and processing areas. Compl. at 7. Plaintiffs allege that the storm water picks up sediments, oil and grease, fine materials, and other pollutants, and has its pH, specific conductivity, and clarity altered by the materials with which it comes into contact at the Facility. *Id.* Plaintiffs further allege that numerous activities at the Facility take place outside and are exposed to rainfall, including the storage and movement of aggregate materials, vehicles and other machines, maintenance and repair work on vehicles and machines, and vehicle fueling. *Id*. Plaintiffs allege that the machinery and other equipment leak contaminants such as oil, grease, diesel fuel, anti-freeze, and hydraulic fluids which are exposed to storm water flows. *Id*. Plaintiffs maintain that the management practices at the Facility are wholly inadequate to prevent these sources of contamination from causing the discharge of pollutants to waters of the United States. *Id* at 8. As the Facility is located adjacent to the Petaluma River, Plaintiffs allege that storm water from the Facility is discharged from the site into channels or other conveyances and subsequently discharged into the Petaluma River. *Id*.

Based on these allegations, Plaintiffs bring one cause of action - Discharges of Pollutants or Storm Water Associated with Industrial Activity Without a NPDES Permit in violation of 33 U.S.C. § 1311(a). *Id.* at 9-10. Specifically, Plaintiffs allege that Defendants discharge storm water associated with industrial activity from one or more point sources at the Facility to the Petaluma River, that Defendants have not obtained a NPDES permit for these discharges, and that the discharges from the Facility are therefore unlawful discharges of pollutants or storm water associated with industrial activity from point sources into waters of the United States. *Id.* Plaintiffs request that the Court declare Defendants to have violated and to be in violation of the Act, enjoin Defendants from discharging pollutants from the Facility, order Defendants to take appropriate actions to restore the quality of navigable waters impaired by their activities, and to award civil penalties, attorney's fees and costs as authorized under the Act. *Id.* at 10.

On October 10, 2011, Defendants filed the present Motion to Dismiss. Dkt. No. 18. Defendants seeks dismissal for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). *Id.*

### III.  DISCUSSION

In their motion, Defendants argue that subject matter jurisdiction is absent because the Clean Water Act does not include facilities with the Standard Industrial Classification code of the type they operate. Defs.' Mot. at 2, Dkt. No. 18. Defendants further argue that Plaintiffs' cause of action for violations of 33 U.S.C. § 1311(a) fails to state a claim for relief because the Act does not require a permit for the alleged storm water discharges. *Id.* at 2.

**A.   Requests for Judicial Notice**

As a preliminary matter, both parties have filed Requests for Judicial Notice. Dkt. Nos. 18-1 (Defs.'s RJN); Dkt. No. 20 (Pl.'s RJN). Defendants request that the Court take judicial notice of the following documents: (1) United States Department of Labor, Occupational Safety & Health Administration ("OSHA") Standard Industrial Codes ("SIC") Division D: Manufacturing, Industry Group 3273 - Ready Mix Concrete; and (2) United States Department of Labor, OSHA SIC Division F: Wholesale Trade, Industry Group 5032 Brick, Stone and Related Construction Materials. Defs.' RJN, Exs. A-B.

Plaintiffs request that the Court take judicial notice of the following documents: (1) selections from the Standard Industrial Classification Manual, produced by the Office of Management and Budget, 1987, published by JIST Works, Inc.; (2) 71 Federal Register, ¶. 32464-32478, from June 6, 2006; (3) selections from the State Water Resources Control Board Water Quality Order No. 97-03-DWQ NPDES General Permit No. CAS000001; (4) a Memorandum dated October 18, 1994, prepared by the EPA's Office of Wastewater Management and Office of Regulatory Enforcement entitled "Policy for End of Moratorium for Storm Water Permitting – October 1, 1994"; and (5) 60 Federal Register, ¶. 40230-40235, from August 7, 1995. Pl.'s RJN, Exs. A-E.

Federal Rule of Evidence ("FRE") 201(b) provides the criteria for judicially noticed facts:

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." It is well established that records, reports, and other documents on file with administrative agencies – such as the State Water Resources Control Board – are judicially noticeable. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 954 fn. 6 (9th Cir. 2009); *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1043-45 (S.D. Cal. 2006). City ordinances are also proper subjects for judicial notice. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 fn. 2 (9th Cir. 2006).

As neither party has raised any objections to the requests for judicial notice, and the requests are not subject to reasonable dispute in that they are capable of accurate and ready determination, the Court GRANTS the parties requests for judicial notice.

**B.     Rule 12(b)(1)**

In their motion, Defendants argue that subject matter jurisdiction is absent because the Clean Water Act does not include facilities with the SIC code of the type they operate. Defs.' Mot. at 2. Specifically, Defendants argue that the Facility is not an industrial facility under the Act; rather, it is a distribution facility that simply stockpiles processed materials for a short period of time until they can be distributed to various Shamrock concrete batch plants or sold to a third party. *Id.* at 9-10. Thus, because the materials arrive on the site already processed, Defendants argue that citizen-suit jurisdiction under 33 U.S.C. § 1365(a) is improper because none of the stored materials are raw material subject to industrial storm water permitting under the Act. *Id.* at 10.

In their Opposition, Plaintiffs respond that the Complaint properlyalleges that Defendants are discharging storm water associated with industrial activity, and that the Facility falls within the EPA's definition of a facility that conducts industrial activity. Pls.'s Opp'n at 1, Dkt. No. 19. Plaintiffs argue that, even if the storm water discharged from the Facility is associated with non-industrial activity, the Act does not exempt these discharges. *Id.*

1. Legal Standard

Federal courts are courts of limited jurisdiction, possessing only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Thus, federal courts have no power to consider claims for which they lack subject matter jurisdiction. *Chen–Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992). The Court is under a continuing duty to dismiss an action whenever it appears that it lacks jurisdiction. *Id.*; *see also Spencer Enters., Inc. v. United States*, 345 F.3d 683, 687 (9th Cir. 2003). The burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Thus, in the present action, Plaintiffs bear the burden of demonstrating that subject matter jurisdiction exists over their Complaint. *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

On a motion to dismiss pursuant to Rule 12(b)(1), the applicable standard turns on the nature of the jurisdictional challenge. A Rule 12(b)(1) jurisdictional attack may be "facial" or "factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In evaluating a facial attack on jurisdiction, the Court must accept the factual allegations in Plaintiffs' complaint as true and draw all reasonable inferences in their favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). As part of its ruling on such a motion, the Court may also consider additional facts that "are contained in materials of which the court may take judicial notice." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In such a case, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Publ'g v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a

motion for summary judgment." *Safe Air*, 373 F.3d at 1039 (citation omitted).  However, "[a] jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of the action." *Id.*  "The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Id.*  "Dismissal is then appropriate 'where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  "This standard, often cited in Rule 12(b)(6) motions, . . . is equally applicable in motions challenging subject matter jurisdiction when such jurisdiction may be contingent upon factual matters in dispute." *Id.* (internal quotations and citation omitted).  "The Ninth Circuit has held that, where the jurisdictional issue is intertwined with the merits, a court cannot determine the jurisdictional issue until the merits of the case are appropriately resolved." *Chie v. Reed Elsevier, Inc.*, 2011 WL 3879495, at *3 (N.D. Cal. Sep. 02, 2011) (citing *Roberts*, 812 F.2d at 1177).

   2.  Application to the Case at Bar

  Here, because the Clean Water Act provides the basis for both the Court's subject matter jurisdiction and Plaintiffs' substantive claim for relief, the question of jurisdiction and the merits of this action are intertwined.  33 U.S.C. §§ 1365(a) & (f) (providing for any citizen to bring a civil action against any person alleged to be in violation of an effluent standard or limitation, including any unlawful act under 33 U.S.C. § 1311(a)); 33 U.S.C. § 1311(a) ("Except in compliance with . . . section[] . . . 1342 . . . of this title, the discharge of any pollutant by any person shall be unlawful.").  Thus, dismissal is only appropriate if it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle them to relief.  *Roberts*, 812 F.2d at 1177.  Accordingly, the Court's analysis shall focus on Defendants' Rule 12(b)(6) argument.

**C.**  **Rule 12(b)(6)**

  Defendants next argue that Plaintiffs' cause of action for violations of 33 U.S.C. § 1311(a)

fails to state a claim for relief because the Act does not require a permit for the alleged storm water discharges. Defs.' Mot. at 2. Specifically, Defendants argue that Plaintiffs cannot allege any facts showing that Defendants, as a matter of law, are subject to the Act and the NPDES program because the activities at the Facility are not directly related to the manufacturing, processing, or storage of raw material. *Id.* at 15-16.

1.    Legal Standard

A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Black*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations and parentheticals omitted). In considering a 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to plaintiff. "However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555. The court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation*, 524 F.3d 1090, 1096 (9th Cir. 2008) (citation omitted); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation

of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### 2. Application to the Case at Bar

Here, there is no dispute that any "discharge associated with industrial activity" is required to have a NPDES permit. 33 U.S.C. § 1342(p)(2)(B). However, Defendants argue that there are no allegations of a discharge of storm water associated with any industrial activity at their properties and, therefore, they have no duty to obtain a permit. Defs.' Mot. at 7.

Federal Regulations define "storm water discharge associated with industrial activity" to mean: "The discharge from any conveyance that is used for collecting and conveying storm water and that is directly related to manufacturing, processing or raw materials storage areas at an industrial plant." 40 C.F.R. § 122.26(b)(14). The Ninth Circuit has observed that "[t]he language 'discharges associated with industrial activity' is very broad." *NRDC v. EPA*, 966 F.2d 1292, 1304 (9th Cir. 1992). "The operative word is 'associated.' It is not necessary that storm water be contaminated or come into direct contact with pollutants; only association with any type of industrial activity is necessary." *Id.* Section 122.26 further provides that, "facilities are considered to be engaging in 'industrial activity'" if they are "classified as" any one of a number of specified SICs. 40 C.F.R. § 122.26(b)(14). Accordingly, the primary question here is whether Defendants' Facility is properly "classified as" any of the SICs listed in 40 C.F.R. § 122.26(b)(14).

In their Complaint, Plaintiffs allege that the Facility is an industrial facility. Compl. at 6. The Complaint alleges the facility "is located in an area zoned by the County of Sonoma for heavy industrial use as a M2 Heavy Industrial District." *Id.* The Complaint alleges that "[i]ndustrial operations at the site include the unloading of barges, conveying sand, gravel, and aggregate materials to large, uncovered piles, loading of materials using electric-powered or diesel-powered front-end loaders, queuing of trucks awaiting loading, and transporting materials from the site on unpaved or gravel surfaces." *Id.* The Complaint further alleges that the sand, gravel, and aggregate materials are transported from the site via trucks owned by Defendant to concrete plants, and that storm water discharged from the Facility includes storm water "that has come into contact with raw

materials that ultimately are used at these ready-mix concrete plants." *Id.* In addition, the Complaint alleges that the following activities also occur at the Facility: "the use and storage of lubrication products, including hazardous substances, which are used to conduct repairs and maintenance of equipment"; mobile fueling of loading equipment; and "[i]ndustrial machinery and heavy equipment, including trucks, are operated and stored at the Facility in areas exposed to storm water flows. *Id.* at 7-8

Beyond the Facility, Plaintiffs contend that Defendants' numerous concrete manufacturing facilities and the Facility at issue here constitute a single enterprise. Pls.' Opp'n at 11. Plaintiffs allege that the Facility is an auxiliary establishment, performing support services for Defendants' concrete manufacturing facilities. Compl. at 6-7.

The SIC Manual (1987) is published by the Office of Management and Budget. Pl.'s RJN, Ex. A. Its introduction explains that:

> The [SIC] was developed for use in the classifications of establishments by type of activity in which they are engaged; for purposes of facilitating the collection, tabulation, presentation, and analysis of data relating to establishments; and for promoting uniformity and comparability in the presentation of statistical data collected by various agencies of the United States Government, State agencies, trade associations and private research organizations.

*Id.* at 11. The Manual defines "establishment" as "an economic unit, generally at a single physical location, where business is conducted or where services are performed." *Id.* at 12. The term "establishment" is distinguished from "enterprise (company)," which "may consist of one or more establishments." *Id.* Each "establishment is assigned an industry code on the basis of its primary activity, which is determined by its principal product or group of products produced or distributed, or services rendered." *Id.* at 15.

Here, Shamrock owns and operates several ready-mix concrete industrial establishments in separate physical locations in Petaluma, Novato, Napa, Santa Rosa, and San Rafael, each of which is categorized as SIC Code 3273 and subject to a NPDES permit which is in place. Compl. at 6-7; Defs.' Mot. at 12. SIC Code 3273 is defined as: "Establishments primarily engaged in manufacturing portland cement concrete manufactured and delivered to a purchaser in a plastic and

unhardened state. This includes production and sale of central-mixed concrete, shrink mixed concrete, and truck mixed concrete." Defs.' RJN, Ex. 1. SIC Code 3273 falls within the SIC Codes listed by the EPA at 40 C.F.R. § 122.26(b)(14). Defendants' plants perform cement concrete manufacturing operations - concrete is made by mixing together water, cement, sand, and rock, and then loaded into trucks and distributed to various job locations. Defs.' Mot. at 12. Defendants contend that it is this processing of aggregate material into ready-mix concrete outside the Facility that subjects them to the Clean Water Act. *Id.*

The Manual further explains that "auxiliaries" are establishments that primarily provide management or support services for other establishments that are part of the same enterprise. Auxiliaries that perform auxiliary functions and are located physically separate from the establishment(s) served and are treated as separate establishments. Pl.s' RJN, Ex. A at 13. Here, Defendants contend that the Facility is a distinct and separate establishment that is to be categorized based upon its own operations. Mot. at 13. Defendants suggest that "it should be categorized under SIC Code 5032." *Id.* SIC Code 5032 is defined as: "Establishments primarily engaged in the wholesale distribution of stone, cement, lime, construction sand, and gravel; brick (except refractory); asphalt and concrete mixtures; and concrete, stone and structural clay products (other than refractories)." Defs.' RJN, Ex. 2.

Auxiliaries that are not treated as separate establishments are assigned SIC codes, "on the basis of the primary activity of the operating establishments they serve." Pl.s' RJN, Ex. A at 16. Although the Manual suggests that where an auxiliary is located physically separate from the establishment or establishment served, it is to be treated as a separate establishment, elsewhere it lists examples of auxiliary establishments such as warehouses, automotive repair and storage facilities that likely are quite often located at a geographic distance from the establishments they serve. *Id.* at 14-15. The Manual also provides for the sub-classification of auxiliaries by an additional one-digit code that follows that of the primary establishment. *Id.* at 16-17. Accordingly, as the SIC Code for Defendants's establishments is 3273, Plaintiffs contend that the SIC Code for the Facility is also 3273, and that the Facility should be sub-categorized as 3273-3. Pls.'s Opp'n at

12. Auxiliary Code Number 3 applies to "Storage yards" as "[a]uxiliary establishments primarily engaged in storing raw materials, finished goods, and other products to be used or sold by other establishments of the same enterprise." Pl.s' RJN, Ex. A at 17.

Based on the parties' arguments and evidentiary support, the Court finds that it is unable to determine at the Rule 12(b)(6) stage whether the Facility's SIC Code establishes that it is or is not an industrial facility. First, although there is no dispute that the Facility is geographically separate from Defendants' concrete-mixing establishments, "it is not entirely clear from the Manual when geographically separate facilities that provide support services to other establishments within the same enterprise should be classified according to the primary activities taking place at those facilities and when they should not." *Ecol. Rights Found. v. PG&E*, 2011 WL 445091, at *2 (N.D. Cal. Feb. 4, 2011).

Second, "[t]he considerations relevant to deciding whether an auxiliary should be treated separately or not would seem to be highly dependent on the purposes for which the classification is being undertaken. The Manual presents the SIC as a system designed for statistical data collection and analysis by governmental and private entities largely in the economic context[.] *Id.* at *2, fn.4. "As such, even if the Manual set out the rules more clearly, they might not be well-suited for determining whether or not a particular facility is engaged in 'industrial activity' for purposes of the Clean Water Act." *Id.* Given the parties' opposing ideas of the proper SIC classification for the Facility, this appears to be a fact-based determination, and the Court finds that such a determination should be made after the opportunity to conduct discovery and further develop the record.

Third, at this juncture, neither party has definitively established that the Facility can be properly classified only under one SIC Code. Furthermore, the implementing regulation, 40 C.F.R. § 122.26(b)(14), provides that plants or facilities "classified as" particular SIC codes are "considered to be engaging in 'industrial activity,'" but it nowhere sets out any rules governing when, if ever, a particular plant or facility must be assigned the code of a larger entity rather than being given its own. As discussed above, the SIC Manual itself expressly states that geographically separate sites are to be treated as distinct establishments, although it also contains implications to the contrary.

Thus, even to the extent that the EPA's governing regulations could be deemed to have incorporated the rules in the SIC Manual by reference, neither Section 402(p) nor 40 C.F.R. § 122.26(b)(14), plainly and unambiguously requires that the Facility at issue be classified under a particular SIC Group. *Ecol. Rights Found.*, 2011 WL 445091, at *3. For these reasons, the Court must deny Defendants' motion.

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: November 2, 2011

Maria-Elena James
Chief United States Magistrate Judge